UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL BRAUTIGAM,

    Plaintiff,

vs.

DIRK PASTOOR, *et al.*,

    Defendants.

Case No. 1:16-cv-1141

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

This civil action is now before the Court on Defendants Andrew Burkett and John Jefferies hereby motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (Doc. 23) and the parties responsive memoranda (Docs. 25, 26). Upon careful review, the undersigned finds that Defendants' motion is well taken.

**I. Background**

Plaintiff, an attorney who has previously practiced in this Court *pro hac vice*, filed this *pro se* action on December 13, 2016, asserting claims of a conspiracy to violate of his First Amendment rights pursuant 42 U.S.C. §§ 1983 and 1985 against Dirk Pastoor and City of Cincinnati Police Officers Andrew Burkett and John Jefferies, as well as seeking a injunctive relief and judgment declaring the Ohio disorderly conduct statute, O.R.C. § 2917.11, to be unconstitutional, thus barring police officers from enforcing it. (Doc. 1).

Plaintiff's complaint arises out of the events that occurred at a condominium association meeting on October 13, 2016 that resulted in (now dismissed Defendant)

Pastoor summoning the police. Plaintiff contends that after the police arrived, the police officers, in conspiracy with Pastoor, deprived him of his First Amendment right of freedom of speech.

To fully appreciate the animosity between Plaintiff and Pastoor, a bit of historical context is worthy of inclusion in this Report and Recommendation. Plaintiff is a unit owner at Rose Crest Condominiums, a seven-unit condominium in North Avondale. (Doc. 1, ¶4, 14).[1] Disagreements over repairs, maintenance, fees, assessments, and board members' fiduciary duties have long been commonplace at unit owner meetings. (Id. at ¶15).[2] Condominium and Assessment fees need to be raised to pay for much needed repairs to the building but the "board members"[3] refused to raise the fees due to the financial instability of some of the unit owners. (Id. at ¶15-17). In addition, Plaintiff alleges that due to the board's refusal to make these needed repairs that his top condo floor unit experienced flooding and water damage from defects in the roof. (Id. at ¶17). It got so bad that Plaintiff went ahead and hired a roofer on his own to make the repairs only to have the roofer threatened with arrest by one of the board members. (Id. at ¶25). Plaintiff further asserts that the board members have diverted association funds for their personal benefit and refuse to have the association's' financials' audited. (Id. at ¶19, 43).

Plaintiff asserts that the board as attempted to wrongfully exclude him from association meetings by not providing him with proper notice and by threatening to call

---

[1] The facts are taken directly from the allegations contained in the Complaint. (Doc. 1).
[2] See also Doc. 1 ¶ 40-42 for a discussion of more needed repairs.
[3] Plaintiff challenges the authority of the alleged board members, calling them "sham board members" at various points in the pleadings. He asserts that they were not duly elected to serve as such and refers to each of them as a "fiduciary." See Doc. 1, p 4. For the purposes of this Report and Recommendation the Court will simply refer to them as the Board.

the police to have him removed from meeting – all in an attempt to avoid being held accountable for their misuse of funds and failure to maintain the property. (Id. at ¶21, 23, 24, 31). In fact, threats of physical violence, and actual violence has taken place at prior meetings. (Id. at ¶ 24, 31, 33, 34). Love thy neighbor is not commonplace at Rose Crest Condominium as the … "bad blood between the unit owners [has] for at least ten years" kept Plaintiff from speaking "to any Rose Crest unit owner on any topic whatsoever not related to Rose Crest business. (Id. at ¶26). Plaintiff still attends the meetings even though he is reluctant to do so for fear of being physically attacked at any time. (Id. at ¶35).

Things escalated yet again at an association meeting held on October 13, 2016 in the building's common area. (Id. at ¶36). Plaintiff was in attendance, as his is right to be, and presented written objections. (Id.) Plaintiff's intention at the meeting was to speak "on topics related to Rose Crest business in an attempt to hold the [board] … responsible for running the association in a legal manner." (Id. at ¶37). Apparently, Pastoor opened the meeting with a discussion about an issue in the upcoming election – a topic Plaintiff did not think was appropriate. (Id. at ¶ 44-45). Ultimately, Pastoor placed a call to 911, transcribed by Plaintiff in his pleadings as follows:

> Yes, this is Dirk Pastoor at 798 Clinton Springs. We're having an HOA board meeting and one of the unit owners is totally out of line and dominating the meeting and just called an 80 something year old secretary as having dementia which is totally untrue and I will not tolerate it I asked him to leave he will not leave can we get a cruiser. Thank you.

(Id. at ¶46).

Officers Burkett and Jefferies were dispatched and responded to Rose Crest.

Upon arrival they encountered Pastoor, who they took to be the "property owner and landlord," as well as several other unit owners including Plaintiff. (Id. at ¶ 49). Pastoor told the Officers that Plaintiff had called another unit owner in attendance at the meeting "a name." (Id). According to a transcript of the discussion,[4] Officer Burkett told Plaintiff that he had the "right to participate in the meeting, but however, you have to be respectful and if at any time you are not respectful the person in charge of the meeting can ask you to leave." (Id. at ¶50). Officer Burkett went on, "What I can tell you is that it's in your best interests, you'll get a lot more things accomplished if things just stay respectful and cordial in the matter here. Uhm I don't think this is any criminal matter at this point uhm so I'm not here to take you to jail or anything like that, I'm simply here to ask you to just stay respectful with the meeting and and so you are more than welcome to bring up your objections and y our points that you have problems with but it is not acceptable if those allegations are true that you saying things about people that you don't have the facts behind you. Ok?" (Id.).

Thereafter, Plaintiff asked the following: "Are you suggesting that if I am disrespectful, subjectively, that that is somehow a crime?" (Id.). Officer Jefferies responded, "Yes, if you cause annoyance to a group of people, that's disorderly conduct." Officer Burkett then added "annoyance or alarm" and then "so if you say something disrespectful to somebody and someone else says I am offended by that that is disrespectful I am annoyed, alarmed, or anything like that, that is technically, by definition, disorderly conduct" … "What I'm trying to avoid is is the pettiness." (Id.)

Despite knowing that Pastoor called 911, Plaintiff stated "I don't see why this is a

---

[4] It appears as if Plaintiff recorded the meeting in some format and typed what transpired in his

police matter." Officer Burkett responded as follows:

> Like I just said, we're a jack of all trades. We do many things. We respond to disorderly children, fourteen, parents who have a hard time with their kids ok, so just because its not criminal doesn't mean that the police aren't called. I'm just saying, we're trying to resolve this in a respectful and easy manner. I don't want to take anyone to jail for this, obviously you have your concerns, but the problem is that if you are offending and annoying or alarming other people within the meeting, ok. You're not going to accomplish anything if there is name calling, if, you know there are accusations being made, what you need to do is, you, it seems that there is some sort of itinerary of topics. What you need to do, what you need to do is stay to the topics and discuss, and if you have your concerns, by all means your concerns are should be heard ok? But what I am going to say is you can't sit here and you can't you can't have outbursts and make allegations and stuff like that because that.

(Id.)

Plaintiff had no intent on complying and left the meeting. (Id. at ¶51, 53). He feared that he would be arrested if he said anything that would be offending and annoying or alarming. (Id.) He believed that by pointing out the financial irregularities that this would be offensive to those he was accusing. (Id. at ¶ 52). He intended "to proceed in a way that was likely to offend some or all of [the board], attempting to hold them to account for common funds, and intends to proceed in this manner at future meetings. (Id.). "It appeared [to him] that the police were remaining behind to 'police' the meeting." (Id.). "Plaintiff was chilled from meaningful participation in the meeting and had his right to free speech abrogated." (Id.)

Thereafter, Plaintiff filed the instant action. Notably, Plaintiff contends that Ohio's disorderly conduct statute as codified at R.C. 2917.11(A) is "so vague and completely subjective that this statute is obviously unconstitutional on its face." (Id. at ¶57).[5] He

---

complaint.
[5] O.R.C. §2917.11(A) states as follows: No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following: (1) Engaging in fighting, in

seeks a declaratory judgment to that effect from this Court and he seeks an injunction directing Officers Burkett and Jefferies ("and any and all law enforcement officers") from threatening him with arrest for disorderly conduct due to the content of his language at Rose Crest meeting. (Id. at ¶68). Plaintiff seeks one dollar in actual damages and ten million dollars in punitive damages. (Id. at ¶70).

Plaintiff's claim against Defendant Pastoor was dismissed on August 18, 2017. The Court found that Pastoor could not be deemed a state actor as required to maintain an action under 42 U.S.C. § 1983. Defendants Burkett and Jefferies now move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

**II. Analysis**

**A. Standard of Review**

A district court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard applicable to a Rule 12(b)(6) motion to dismiss. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir.2001). Accordingly, "we construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir.2007). While such determination rests primarily upon the

---

threatening harm to persons or property, or in violent or turbulent behavior; (2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person; (3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response; (4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender; (5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001) (*quoting Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997)) (emphasis omitted). The court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr.*, 508 F.3d at 336. To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.*

**B. Defendants' motion for judgment on the pleadings is well-taken**

As an initial matter, Defendants argue that the Court should decline to review the challenge to the constitutionality of O.R.C. §2917.11 since Plaintiff failed to comply with Fed. R. Civ. 5.1(a) which requires Plaintiff in this case to file a notice of constitutional question and to serve the Ohio attorney general. Fed. R. Civ. 5.1(b) also requires the Court to certify to the Ohio attorney general that a statute has been questioned. Neither notification nor certification occurred in this case. Plaintiff does not respond to this argument in his memorandum in opposition. The Court is bound by Rule 5.1 and would typically be disinclined to rule upon the issue in the absence of a response from the Ohio Attorney General, however, based upon a review of the merits below, the constitutional challenge should nonetheless be rejected. See Fed. R. Civ. 5.1(c) ("Before the time to intervene expires, the court may reject the constitutional challenge.")

1. *Standing*

Defendants contend that Plaintiff lacks standing to bring his action. It has been

long established that standing is a fundamental element in determining federal jurisdiction over a "case" or "controversy" as set forth in Article III of the Constitution. *Morrison v. Bd. of Educ.*, 521 F.3d 602, 608 (6th Cir. 2008). "By now, it is axiomatic that a litigant demonstrates Article III standing by tracing a concrete and particularized injury to the defendant--whether actual or imminent--and establishing that a favorable judgment would provide redress." *Id. citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Regarding First Amendment litigants, the Supreme Court has soundly held that "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id. citing Laird v. Tatum*, 408 U.S. 1, 13-14, 92 S. Ct. 2318 (1972). "Absent proof of a concrete harm, where a First Amendment plaintiff only alleges inhibition of speech, the federal courts routinely hold that no standing exists." *Morrison*, 521 F.3d at 609 *citing Grendell v. Ohio Supreme Court*, 252 F.3d 828, 834 (6th Cir. 2001) ("[F]ears of prosecution cannot be merely 'imaginative or speculative.'" (quoting *Younger v. Harris*, 401 U.S. 37, 42, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971))); *Adult Video Ass'n v. U.S. Dep't of Justice*, 71 F.3d 563, 566 (6th Cir. 1995) (same); *United Presbyterian Church in the U.S.A. v. Reagan*, 238 U.S. App. D.C. 229, 738 F.2d 1375, 1380 (D.C. Cir. 1984) (distinguishing a chilling effect from "the immediate threat of concrete, harmful action").

Plaintiff contends that he has been injured by not being able to meaningfully participate in the October 13, 2016 meeting or in future meetings due to a threat of arrest. According to Plaintiff, this "chilling" affect resulted in concrete injuries. However, like the claim in *Morrison, supra*, the allegations here involve Plaintiff's choice to chill his

own speech based on his perception that he would be arrested. He chose to leave the meeting rather than continue to participate. Plaintiff's subjective belief that the mere act of questioning one as to the accuracy of financials, or even more directly, asserting that one is misappropriating funds or stealing, would have led to his arrest is unfounded. The act of engaging in debate or disagreement is not disorderly conduct. What the relevant portion of the statute says is:

> "No person shall recklessly cause inconvenience, annoyance, or alarm to another by … (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior; (2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person; (3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response; … and (5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

Plaintiff alleges that just because he was going to challenge the actions of the board members that his comments would be deemed by those board members to be annoying or offensive and thus, he would be arrested. The Court is left to speculate as to not only what Plaintiff would say and how he would say it but also what the Officers would have done. The Officers did not arrest Plaintiff. Nor did they threaten to arrest him for participating in the meeting. In fact, they encouraged him to participate. What they did ask for was for him to do so in a respectful manner and to avoid pettiness. Had Plaintiff engaged in a discussion about the misappropriated funds (or whatever topic was on his mind) without shouting, name calling, threatening or provoking violence, etc., based upon the statements that the Officers made at the meeting, it is unlikely that he would have been arrested. But no one can be for sure at this point because Plaintiff chose to

leave the meeting. Without more, Plaintiff does not have an injury and lacks standing.

    *2. Alleged Constitutional Violations.*

Assuming arguendo, that Plaintiff could establish standing, the undersigned will address Plaintiff's claim that his constitutional right to free speech was violated. Plaintiff contends the Officers (in conjunction with previously dismissed defendant Pastoor) violated his constitutional right to free speech by threatening to arrest him for disorderly conduct. Plaintiff also contends that Defendants conspired to violate his constitutional rights.

Here, Defendants, contend that they are entitled to judgment as a matter of law because Plaintiff has failed to establish that either officer violated his constitutional right. To succeed on a claim for a violation of § 1983, the plaintiff must show that (1) a person (2) acting under color of law (3) deprived him of his rights secured by the United States Constitution or its laws. *Berger v. City of Mayfield Heights,* 265 F.3d 399, 405 (6th Cir.2001). There is no debate that the Officers were acting under color of law. The remaining question is whether or not he was deprived of his right to free speech by the Officers' conduct.

The First Amendment generally prevents government from proscribing speech or expressive conduct. *R. A. V. v. St. Paul*, 505 U.S. 377, 382 (1992) (citations omitted). The protection is not absolute, however. There are certain limited categories of speech that are "of such slight social value" that the First Amendment permits restrictions to be imposed on them. *Id.* (quoting Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72, 62 S. Ct. 766, 86 L. Ed. 1031 (1942)). These include "fighting words," which are "personally abusive epithets which, when addressed to the ordinary

citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Id.* (citations omitted). *See also Kinkus v. Village of Yorkville*, 453 F. Supp.2d 1009, 1014-15 (S.D. Ohio 2006) ("fighting words" is a narrow exception to First Amendment protected speech, and even though an individual may use profane speech to a police officer, the content of the speech is protected). The First Amendment "does not, under all circumstances, preclude a police officer from intervening when a citizen speaks or engages in expressive conduct**.**" *Spier v. Elaesser,* 267 F.Supp.2d 806, 809-810 (S.D.Ohio. 2003) (finding defendant police officer was entitled to qualified immunity for a disorderly conduct arrest resulting in dismissal of the charge due to insufficient evidence, where the officer reasonably believed the arrestee tried to incite a crowd).

Here, Defendants contend that Plaintiff was not denied any constitutional right. He was not arrested. To the contrary, he was encouraged to participate in the meeting. Yes, the Officers appeared to Plaintiff to be staying at the meeting but given the history of animosity between Plaintiff and the Board members this is not surprising. Their presence after responding to a 911 call is not sufficient to violate Plaintiff's First Amendment right to free speech, nor would it chill a person of ordinary firmness from continuing to speak. Thus, Plaintiff fails to state a claim under 42 U.S.C. § 1983.

In addition, as noted by Defendants, a conspiracy claim cannot survive a Rule 12(c) motion if the complaint fails to allege sufficient facts, accepted as true, plausibly stating a claim that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Faith Baptist Church v. Waterford Twp.,* 522 Fed.Appx.

322, 329 (6th Cir. 2013), *citing Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). Here, Defendant Pastoor has been dismissed from this action and Plaintiff pleads only conclusory statements to support his claim that Officers Burkett and Jefferies conspired to violate his rights. As such, Plaintiff's purported conspiracy claim should be dismissed as speculative. See *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).

    3. *Qualified Immunity*

Defendants further assert that they are entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz,* 533 U.S. 194, 200–201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808 (2009).

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant,* 502 U.S. 224, 229(1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). See also *Dorsey v. Barber,* 517 F.3d 389,

394 (6th Cir.2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two-pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury? *Saucier,* 533 U.S. at 201. In its discretion, the court may initially address either of these questions in light of the circumstances of the particular case before it in resolving an officer's qualified immunity claim. *Pearson,* 555 U.S. at 236–37.

Plaintiff bears the burden of showing that a right is clearly established. *Everson v. Leis,* 556 F.3d 484, 494 (6th Cir.2009). Defendants, however, bear the burden of showing that the challenged actions were objectively reasonable in light of the law existing at the time. *Id.*

In determining whether a right is "clearly established" for purposes of the qualified immunity inquiry, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier,* 533 U.S. at 202. This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (quoting *Saucier,* 533 U.S. at 201). The First Amendment is without a doubt a clearly established right. However, when viewed in the situation that presented itself at the October 13, 2016 meeting, it would have not

-13-

been clear to the Officers that by responding to a 911 call and attempting to restore order at a meeting that their conduct was unlawful.

As to the Officers' conduct, the unlawfulness of it must be apparent in light of preexisting law. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir.1994) (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir.1993)). It is clear that the Officers' conduct was reasonable. They were dispatched to Rose Crest because Pastoor called 911. They arrived and attempted to diffuse the situation by encouraging Plaintiff to participate in the meeting but to be respectful due to the allegations that he called a board member a "name." They did not arrest Plaintiff and were clear that the events that had occurred up to that point did not equate to a criminal matter. What happened next was up to Plaintiff. He could have engaged in a civil discussion without shouting or name calling. Instead he left. The Officers are entitled to qualified immunity.

  4*.*  *Request for Injunctive Relief*

Plaintiff also seeks an injunction prohibiting Officers Burkett and Jefferies ("and any other police officers") from "attempting to improperly insert themselves in private matter [sic] involving (chronological) adults, not fourteen-year-old kids—by threatening to arrest Plaintiff for speaking and, it seems, attempting to monitor the meeting as it proceeded." (Doc. 1, ¶56). Plaintiff's request is not well-taken.

"A preliminary injunction is an extraordinary remedy designed to preserve the relative positions of the parties until a trial on the merits can be held." *Tenn. Scrap*

*Recyclers Ass'n v. Bredesen,* 556 F.3d 442, 447 (6th Cir.2009) (emphasis added). An injunction decree should not be granted routinely. *Weinberger v. Romero–Barcelo*, 456 U.S. 305 (1982). "The decision to grant or deny a preliminary injunction is within the sound judicial discretion of the trial court." *Mt. Clemens v. U.S. Env't Prot. Agency*, 917 F.2d 908, 914 (6th Cir.1990) (quoting *Tyson Foods, Inc. v. McReynolds*, 865 F.2d 99, 101 (6th Cir.1989)).

In exercising its discretion with respect to a motion for a preliminary injunction, a district court must give consideration to four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998). In the Sixth Circuit, these four factors are to be balanced and are not prerequisites that must be met. Thus, a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue. *Donaldson v. United States*, 86 F. App'x 902, 903 (6th Cir.2004).

A movant's burden is even more difficult to satisfy where, as here, Plaintiff seeks an injunction to obtain affirmative relief beyond maintenance of the status quo. See 18 U.S.C. § 3626(a)(2) ("In any civil action with respect to prison conditions ... [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."); *Texas v. Camenisch*, 451 U.S.

390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). Thus, the purpose of a preliminary injunction is to prevent irreparable injury and to preserve the Court's ability to render a meaningful decision on the merits (see *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority,* 163 F.3d 341, 348 (6th Cir.1998). To demonstrate irreparable harm, a plaintiff must show "actual and imminent" harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir.2006). As stated above, Plaintiff has failed to allege any actual or imminent injury and thus, is not entitled to injunctive relief. Furthermore, for the reasons articulated above, he has failed to show a strong likelihood of success on the merits, that others would not be harmed by the issuance of the injunction and that the public interest would be served by issuance of the injunction.

    5. *State Law Claims*

To the extent that Plaintiff's complaint alleges claims under state law, such claims should be dismissed because plaintiff has failed to state a cognizable federal claim for relief, the Court should decline to exercise supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

**III. Conclusion**

For the reasons stated herein, **IT IS RECOMMENDED** that Defendants' motion for judgment on the pleadings (Doc. 23) be **GRANTED,** and this case be **CLOSED**.

               *s/Stephanie K. Bowman*
               Stephanie K. Bowman
               United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL BRAUTIGAM,

    Plaintiff,

vs.

DIRK PASTOOR., *et al.*,

    Defendants.

Case No. 1:16-cv-1141

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).